The State Appellate Court in this case rested its decision on the Trial Court's credibility findings and it also adduced some facts to show why it was deferring to the Trial Court. But the Trial Court's credibility finding was made without adequate investigation and the additional facts simply don't exist, they're just not in the record. Counsel, let me make sure I understand what the argument is about. As I understand it, you're not arguing that no matter what kind of crazy ideas this juror had, the judge was stuck with them. Once the jury was sworn, that was the jury and the judge can't take out one who's going to hang it up and put it in an alternate. You're not arguing that. What you're arguing is that the investigation into the jury, into this juror, was inadequate and therefore the judge abused the discretion that the judge had to replace the juror. That's correct, Your Honor. That is exactly the argument. And the second part of the argument, Your Honor, is that when the Appellate Court reviewed the Trial Court's credibility determination, the Trial Court's decision that Juror Morgan, Mrs. Morgan, was telling the truth about what Mr. Marshall had been doing in the jury room, the Trial Court – I'm sorry, the Appellate Court reported several facts to support its reliance on the Trial Court's credibility finding, but those facts just don't appear in the record. And perhaps before turning to the Trial Court's credibility findings themselves, I might turn to what the Appellate Court did. First, the Appellate Court, of course, relied on the trial judge's decisions about credibility, but it also adduced some facts that just are not in the record. First of all, the Appellate Court said that the judge didn't have to interview all of the jurors because four jurors, quote, provided ample corroboration. I couldn't see what was the matter with the interviews. It struck me that these interviews of the jurors were really questionable and problematic because it was judicial intervention in the process of deliberation. The less interviewing you could do, the better. And once the judge interviewed the foreman and the juror that the judge took off, and the juror who said that he or she heard that juror make these remarks even before the jury was sworn, that he never could convict anyone of murder in these circumstances, there just wasn't going to be a murder conviction out of him. And another juror who backed it up. Why isn't that enough? The other juror didn't back it up, Your Honor. What we have here as well as the other juror didn't, but still, why isn't it enough? Well, for one thing, Your Honor, Mrs. Morgan, the one who said that Mr. Marshall had said there's never – I'm not going to vote for murder, she said that he said it in two places, and perhaps the briefs were not sufficiently clear on this point. She said he said it not just in conversation in the hallway, but she said he said it in deliberations. So one of the things that the trial court could have done was to see whether her report of this was a reflection of, since he denied it, Mr. Marshall denied it, whether her report of this was a reflection of disagreement about how to interpret the argument. Sure he could. He could ask every juror about the deliberations, but why should he? That's a very intermentionist thing to do about deliberations. And why does the Constitution say you must? The Constitution says you must, Your Honor, because the Constitution says that credibility determinations can't be relied upon unless they're based on an adequate investigation. And Torres v. Prunty stands for that proposition. In Torres v. Prunty – And where does it say that adequate means you have to ask all the jurors? Your Honor, adequate means you have to ask all of the jurors in this case because all of the jurors said different things. Mr. LeBlanc said, the foreman, he said, Mr. Roby says that he – I'm sorry, Mr. Marshall says that he sees his son when he looks at Mr. Roby, and that's misconduct. Mrs. Crownover said everyone's obeying the law. Mr. – Mrs. Morgan said Mr. Marshall says he's not going to vote to convict because the prisons are already full and he doesn't want to fill them further. And he has a ministry and it hurts him. And Mr. Marshall said, no, I use analogies and I try to make myself clear, but I would surely convict if there were evidence to support it. And although I made an analogy to my son, excuse me, my analogy was only that Mr. Roby, the much younger co-defendant who knew that Mr. Clark had a gun, might have felt himself in a position of fear. And so what would the other – what might the other jurors have said? I mean, the court – the appellate court here said it was enough because everyone corroborated Mr. LeBlanc, but everyone didn't corroborate Mr. LeBlanc. The court said four jurors corroborated him, but only four jurors were ever even interviewed. Mrs. Crownover certainly didn't corroborate him. Well, the appellate court apparently was asked to look at these investigation reports also, which seemed to me, if I were in the appellate court, I'd say that's quite inappropriate. But the appellate court didn't say that. It was asked to look at all this stuff. And there's a lot of stuff in there. And some of it helps and some of it hurts. So – and the appellate court does refer to that when it talks about – the list mentions four of these people in the footnote. And if you look at it, indeed they do give a very strong impression that Marshall was playing fun and games before the – But the trial court didn't have any of that information. I understand that. But the point is, apparently the defense asked the appellate court to take new evidence on appeal and apparently at least looked at this junk. Oh, no, Your Honor. That was a post-trial motion directed to the trial court. So then the trial court did have this at some point and denied the post-trial motion, I take it. But it did deny the post-trial motion. And so the appellate court had this information in front of it, and it finds a lot of more corroboration for what was found. Well, Your Honor, let's look again at – look again at Torres v. Prunty. What the court decided there was that the trial judge should have done something more, something relatively simple, to decide whether the defendant was honestly saying that he now believed the judge and the lawyer were part of the conspiracy against him. Now, remember, the trial judge already knew that a psychiatric report said that the defendant really did believe, honestly and sincerely, that there was a conspiracy against him. The trial attorney came in in the middle of trial and said, my client now thinks you and I, Your Honor, are part of this conspiracy. And this Court said the trial judge didn't conduct an adequate investigation before just dismissing this defendant as someone who was trying to get to fire his lawyer again. So it might have turned out, Judge Fernandez, that the defendant was lying. It might have turned out that the psychiatric report would have reported that this defendant wasn't sincere. I'm talking about this case. Are you telling me now that this information, we should ignore it, the court of appeals should have ignored it, or the trial court should have ignored it? Which are you saying? Don't talk to me about another case. Talk to me about this, this information, which were I a judge, I wouldn't have paid attention to it. I think it's horrible. But that's neither here nor there. California courts apparently relied on it. Now, are you telling me they should not have relied on it? They should have relied on it. What should they have done? I think they should not have relied on it, Your Honor. And the reason is that what's important here is the defense asked them to rely upon it. No. Well, the defense did ask them to rely on it, but post-trial, to reassess them. But you're saying, I didn't understand the post-trial, I didn't hear that, you're saying, but they should have said no. As a matter of constitutional law, they just said no, we're not going to pay any attention to that. Is that what you're saying? I'm saying that that's correct. They should not have paid any attention, because at the time of the case Which Federal constitutional provision says that when the defense asked them to look at all this stuff, handwritten notes of supposedly what jurors said, they must refuse to do so when the defense asked them to look at it. Tell me. Your Honor, Mr. Roby is entitled to an impartial jury under the Sixth Amendment. And this stuff was not relevant at the time that Mr. Marshall was excused because it didn't exist. So you're saying that this should not have been considered by the California courts, and we should not consider it either. Is that true? I hear you. If I had been writing the California court of appeal opinion, I would have written that this information suggests that Mr. Marshall wasn't impartial, but the trial judge did not have that information, and we can't make that kind of post hoc decision. The trial of the appellate court made other findings of fact purportedly that also are not that are simply not in the record. In addition to saying that everybody corroborated Mr. LeBlanc, which certainly was not the case, the appellate court also said that Mr. LeBlanc, as well as Mrs. Morgan, had said that Mr. Marshall had said that he wasn't going to convict anyone of murder because of his ministry, and he didn't want to be responsible. Counsel? Yes. I'm a little confused on something. We can't get anywhere with Symington, because Symington says that habeas cases are different. It's a direct review case, and this is a habeas case. Yes. Since it's a state habeas, we have to know what Supreme Court decision the state court of appeals decision is contrary to, or else that it's an unreasonable application of the evidence to determine the facts. Are you just going on, I misstated that formula. That's all right, Your Honor, I understand what you're saying. Are we just going on that second branch? Yes. An unreasonable determination of the facts in light of the record presented to the state court of appeal. That is, the record that the trial court had, so that the state court of appeal could adequately review what the trial court did. And the trial court Now, why, if we're looking at unreasonable determination of fact, don't we have to just follow Perez on its deference toward the trial judge's credibility determination? Ordinarily, yes. Ordinarily, I think that's correct. Ordinarily, in an ordinary case, the trial judge is entitled to deference. What I'm thinking is Perez, you know, it had a dissent, but it's the law of the circuit. We're bound by it. Yes, Your Honor. But this, when you look at Perez in conjunction with Torres v. Pronte and Miller v. Cockrell, both of which were decided after Perez, Perez was 97, Torres, 2,000. Miller v. Cockrell, 2,003, from the Supreme Court. If you put all of those together, you can see that ordinarily, it's true, the trial judge is entitled to great deference. But Perez is a different kind of case. In Perez, there's no suggestion that the trial judge didn't adequately understand or hadn't got a perfect, a more perfect idea of what the truth was. I don't get that part. It seems to me that the other jurors are like anybody reporting what was said orally when a whole lot of people were talking about a whole lot of different things. You have to expect different people to remember different details of what was said. The fact that they recite different details doesn't mean that they're in conflict with each other. And the interviews that the judge did, I don't actually see why he couldn't make a better interview. That's what I'm missing, I guess. I think the problem is that we don't know what would have happened had he talked to the other eight jurors. Well, we never know what would have happened if there was more information. Exactly. But I think Symington is instructive on that point. And I realize it's a direct appeal case, but I think, I'm not citing it for the proposition  that it's a kind of inquiry that a trial judge can do when he's faced with this very, very delicate question of how far to inquire given the privacy and secrecy that have to be preserved in jury deliberations. We can tell Federal district judges what they ought to do for good or ill, but we can't tell State judges what to do, except insofar as there's a constitutional boundary that they cross. Right. I agree, Your Honor. That's absolutely correct. But the constitutional boundary in this case, as Torres makes clear, is that there has to be an adequate investigation before credibility findings may be made. Well, look, here you have something that asking all the jurors in the world won't help too much, except the one juror says he told me privately in the hall X, and he says I didn't. You have an experienced trial judge, pretty well-known, experienced California trial judge, knows what he's doing, been around a long time, and he says, you know, I, I limb from what Marshall told me earlier on, what he was asking me earlier on about aid and abet, and from the way he presents to me, and from the way she presents to me, I think she is absolutely honest vis-a-vis him. So I've listened to two witnesses saying a contrary thing. I think Marshall's not telling me the truth. I think he did tell her what she said he did. Why is that wrong? I mean, why can't a trial judge do that? Because, Your Honor, he or she also said that he said it generally during deliberations. And so that's the reason. And if you look at what the other jurors said, some of the jurors thought he did, too, in an elliptical way. Some of them thought Mr. LeBlanc had committed misconduct. If, I mean, if that's true. I'm sorry. If some of them thought that the foreman, LeBlanc, had also committed misconduct. Oh, of course. I'm just saying, the thing is, she knows what he told her face to face, and now he's saying these funny, elliptical, un-understandable things. She thinks he's saying the same thing again, maybe not in the same words. That's what the trial judge thinks. What's wrong with that? What's wrong with that, Your Honor, is that there's no way to tell whether she, whether her interpretation of that is based on a fundamental disagreement with him about how he viewed the evidence in light of his understanding of the aiding and abetting instruction. Now, it's true that there's not. No, that's not so. The primary, the major thing, that there's no dispute is one-on-one, as she said, he expressly told me he, before the evidence even came in, there was no evidence in the case yet. And he expressly said, there is no way I'm going to convict this guy for that. That's what he said. I agree. That's by far the most problematic fact in this, in this appeal, Your Honor. Well, yeah, it's kind of problematic. Yes. On the other hand, she also said that he said it to everyone in deliberations. And yet when LeBlanc, the foreman, the one who was ill and by his own admission frustrated and wrote this note accusing, making a very serious accusation against Mr. Marshall, when he's asked what's going on with Mr. Marshall, what is the basis of your opinion here, all he says is, Mr. Marshall has sympathy for Mr. Roby because he has a kid who's about the same age as Mr. Roby. And the trial court even asks a closeout question, is there anything else the trial court says about either Mr. Marshall or Mr. Thornwalt, the other juror complained of, that you're basing this accusation on? And Mr. LeBlanc says, quote, that's it. Would it be fair to say that the hallway conversation is the critical statement? It's before any evidence and he says I'm not going to convict no matter what. And what you're saying is not that the judge could have interviewed more witnesses to that statement, but that the judge could have and had to interview more witnesses to the corroboration of that statement. The corroboration of that statement. What was said in the jury room was corroboration. It wasn't the critical statement itself. I'm not sure I understand the question, Your Honor. Well, the critical statement is before he's heard any evidence, he says I'm not going to convict no matter what. And what happened in the jury room, if he spoke consistently with that in the jury room, it corroborates that he said that. And if he spoke inconsistently with that, it tends to rebut that he said that. And what you're saying is the judge, not that the judge didn't adequately investigate what was said in the hall, but that the judge didn't adequately investigate what was said in the jury room, which was corroboration for what was said in the hall. Yes. I would say that that's, yes. Let me ask a question. Yes, Your Honor. Would your argument be different if the judge had also excused Mr. Thornwall? I'm not sure that it would be different, Your Honor. I think it's certainly odd that the accusation against Mr. Thornwall was, at least to my eyes, on its face far more serious than the initial accusation against Mr. Marshall. And the judge simply brushed it aside. I assume that you were using that as an argument that the judge was not impartial and the judge did not do an adequate investigation because there was a serious charge against Mr. Thornwall, and yet that juror was not excused. That's correct, Your Honor. All right. That's correct. This was part of the judge's initial rush to confirm what he believed to be the case so that the deliberations in this very long trial could continue. Thank you. I'd like to reserve the rest of my time, please. Thank you, counsel. Thank you. Counsel? Good morning, Your Honors. Deputy Attorney General David Daly, correspondent. May it please the court. As counsel has already pointed out, this case is not about the legal standard employed by the state courts. This is not a contrary to cases. This is a case where there's an allegation of an unreasonable application of established precedent. Now, I think it's important to point out that Petitioner at least implicitly concedes that if the trial court is granted the special deference it is supposed to be afforded in evaluating juror credibility, that the petition should be denied. Let me ask a question. I'm back to Juror Thornwall. How do you respond to the assertion that dismissing Juror Marshall, the court sent a clear message to the remaining jurors, especially Juror Thornwall, that it endorsed their proclivity for conviction? Well, I think the judge might be referring to some of the analysis that she had in her dissent in the Paris case. And since I dissented in the Paris case, I think I would avoid that case at all costs. You may refer to it if you wish. But I was concerned, evidence that Thornwall, you know, was for conviction, Marshall was not for conviction. No further investigation of Thornwall, dismissal of Marshall, but not Thornwall. Right. Well, in terms of the jury's perspective, the jury sent a note to the judge, saying that these two jurors perhaps are not following the law. Would you please inquire? The judge then starts an inquiry, one juror at a time, selected at random besides the jury foreman, and determines that because of the pre-deliberation statement by Juror Marshall, that he, before the evidence was even in, had decided that he would not convict of murder, that that was the primary basis that that juror would be dismissed. Now, Juror Thornwall is sent back to deliberate with the jury, and indeed, I believe he becomes the new foreman of the reconstituted jury. So the message to the jurors is that it couldn't have been because they were in the minority position, because Thornwall came back. So clearly that couldn't have been the reason why Marshall was excused. So I really don't see how it sent any kind of negative message to the jury. In terms of Juror Thornwall himself, to the extent that he felt that any pressure was put on him by the removal of Juror Marshall, it really doesn't seem like he felt any particular pressure. He became the foreman of the jury, and led the discussions from that point out. I understand your position. Marshall was kind of special, too, wasn't he? Because he's the one who, if one reads the transcript, was sort of touching to the judge that, if I find he aided and abetted on the robbery, then I have to apply that separately and decided if he aided and abetted on the murder. And the judge said, no, no, no, no, no. If you find he aided and abetted on the robbery, school's out. He's guilty of murder. And the judge notes that, that Marshall doesn't want to do that. And that was part of the, called the gestalt, that's going on when the judge is talking about why he's removing Marshall. Wasn't that right? Your point's well taken, Your Honor. In fact, during the session where the court explained the aiding and abetting and the felony murder instructions, and how those instructions intersected with one another, Juror Marshall, three different times, three separate times, tried to state his, his, his beliefs about what the instructions should mean. And each time, Juror Marshall was, was thwarted by the judge. The first time he asked whether the aiding and abetting, abetting instructions, instructions, excuse me, can be applied separately. And the judge explains that they can't. He then asks if they can be applied to both robbery and murder. So he restates the same question in a different form. Finally, he gets even a little bit, sort of picks, picks at the judge a little bit. And he says, well, you know, this instruction says crime in the aiding and abetting. It doesn't say robbery or murder, even though a latter part of the instruction specifies that it's for robbery. And, and the court makes clear to Juror Marshall that, that it only, the aiding and abetting instruction only applies to the robbery. And then they have to look at the felony murder instruction to see whether the victim died during the course of the robbery. So now you have a situation where apparently all the jurors have a voice vote to convict on the robbery. And then you have this very long, detailed discussion by the court about the aiding and abetting, abetting and felony murder instruction. There's minimal deliberations over the next two days because jurors are sick. And then basically when the juror, the jury comes back to deliberate again, overnight practically, although there were several nights in between, but there were no deliberations, Judge Marshall has changed his mind and he's changed his mind because he realizes that. Well, wait a minute. I, I think you misspoken. I got lost because of it. You said Judge Marshall has changed his mind. I'm sorry, Juror Marshall, not Judge Marshall. You're talking about Marshall, the one that was dismissed. Yes, that's correct. Okay. You're saying that when he found out the felony murder rule applied, he wasn't going to find the aiding and abetting. That's right. And when one looks at all the circumstances, it really makes a lot of sense. You, we find out that Marshall said before deliberations, you know, I just can't convict anyone of certain crimes. One of those crimes being murder. He didn't say robbery. He said murder, murder is a very serious crime. They go through the evidence. They, they do a voice vote. They find that he is guilty of robbery. And so they get on to, to the murder. Marshall at this point has thought he can separate those two and he won't have to convict on the murder. When he finds out that really no reasonable person could, could argue that the victim didn't die during the course of this robbery. He realizes that he, he, he, either it's all or nothing. And, and that's when he decides to, you know, to, to vote not guilty on the robbery. And, and following that, we get the note to the court. I'd like to address for a moment the cases that have been cited in terms of whether or not. Could you, could you, could you address before you get to that, the other jury, the one who the majority of the jury also complained about, who was not dismissed? Mr. Farnwell. That's right. Mr. Farnwell had made a statement allegedly during deliberations that, you know, I don't care what the instructions are. I'm not going to convict. And, and that's definitely, well, that's most likely the statement that caused the jury to be concerned. Now, I think when the judge did his inquiry I think the judge is enlightened to the fact that during deliberations things can, can get heated and people can say things. And just because a person makes a statement doesn't mean they necessarily will follow through with that threat. He might rel, you know, relance and say, okay, let's look at the instructions and follow the law. During the inquiry there was really no evidence like the evidence that Morgan provided. You know, here's a statement outside of deliberations where he's clearly saying he's not going to do this. Also, when you compare Farnwell with Marshall, Marshall also mentioned a lot about, talked a lot about the ministry he was in. He apparently talked a lot about his son. So there was really a lot more circumstantial evidence, too, that he wasn't following the law. And I must say, if, if the trial court had continued to interview the other jurors, the judge may have found enough evidence to excuse Juror Farnwell also. The court didn't conduct further inquiry and decided that the statement on its face by Farnwell simply wasn't enough to show that he was refusing to follow the law. And so he remained on the jury. I think it was, as your honor pointed out, it really, the, the specific thing was Morgan's allegation that, this pre-deliberation statement of a refusal to convict on murder. And then when you combine that with, with all the evidence that you see in this case, it seems clear that Marshall was just not going to convict on, on murder in this case. Now, in Torres versus Prunty, I think as your honor has mentioned, you know, this is a case where the court failed to hold a hearing of any kind at all, in the face of really substantial evidence that the defendant wasn't competent to stand trial. So that case stands for the proposition that a court should hold a hearing. And, and that's exactly what the trial court in this case did, is hold a hearing. And when you look at the other cases, in Paris versus Marshall, the court only questioned two people, the removed juror and the foreman. And there was no discussion that the inquiry by the court was somehow inadequate. Also, when you look at Miller versus Stagler, a juror was removed on the allegation that that juror was drunk one day in court. In that case, the court only questioned the removed juror, the bailiff. A juror identified as Juror Lance and the jury foreman. That's, that's very much like this case. Four, four witnesses talking to the judge before the judge makes a decision. Certainly in that case, the judge could have asked all the remaining members of the jury if they noticed whether this juror was drunk. But he felt that after questioning four people, that that was sufficient evidence to make a ruling. In the Ninth Circuit, no one said that was, that was wrong, that he should have interviewed more jurors. As the court has pointed out, the United States versus Simonton really is just not on point, it's a, it's a direct appeal and it's inapplicable to habeas. Also, I think just common sense says that, you know, what could the other jurors have told the judge about the, the pre-deliberations conversation between Morgan and Marshall? The record seems to show pretty clear that only Morgan and Marshall were present for that conversation. And as the court has pointed out, to, to question each and every juror in this case would have necessarily involved an invasion into the jury's deliberation. Greater invasion than there already was in this case. Which is something that is discouraged in, in federal precedent. What, what is your position on all of these questionnaires? We're speaking of invasion of the jury process. Of all these questionnaires that apparently were put to the trial court after the fact, and then to the appellate court, and are now presented to us, of course. What is the State's position on these? Excuse me? I found it interesting. This wasn't a case where the defendant in any time sought sort of an official hearing, or he never filed a habeas in the state court, seeking to expand the record. And instead what they did is they contacted the juries on the, you know, the, the former juror members on their own. Asked them if they would speak to defense counsel and gave them a list of questions that were somewhat charged to their leading questions, trying to get the answers that the defense wanted. And then counsel here today has, has urged the court to to ignore these. Petitioner's argument mainly being that if we had talked to these other jurors, we may have found something else out that would have made the judge change his mind. And yet when we have at least some information that's in the record, counsel, you know, encourages the court to disregard this information. And rank speculation is not clear and convincing evidence, and, and cannot overcome the, the presumption of correctness in this case. I did, Your Honor, you know, look at those obviously looked at those handwritten notes by the jurors. And, you know, LeBlanc, as we know, thought that he wasn't following the law. It's a mixed bag of things. What are we supposed to do? What are we supposed to do with that mixed bag, according to you? Ignore it? Well, I think counsel's correct. This information wasn't in front of the, of the trial judge at the time he made this determination. I hear that. And I, and I think that needs to be, we need to keep that in mind in turn, vis-a-vis. There was a, are you afraid to say ignore for some legal reason? I mean, I just think that the quality of this evidence is so low that it really, it should be ignored. All right. Can we ignore it in, in view of the fact that apparently the California courts did not? And if we do, is that an evidentiary decision, a constitutional evidentiary decision, or is it something else? Well, since the California court did consider it, and this court is reviewing the California court of appeals decision, I mean, it's in the mix, isn't it? Well, more or less. Should it be? That's what I'm asking. That's why I'm asking the question. You know, apparently they put, they, they present it after the fact. Now, I should think that the time we focus on is when the judge makes a decision. To me, that's the relevant time. And that's the time to decide, was there an error in the California court system? That's what I would think. On the other hand, I don't like this business of poking around in juries anyway, but that's another question. That's not the law. You can poke around in what the law. Not the law in California. In Alaska, none of this would have happened. Right. Okay. So, so maybe I should move. So, so, so, you know, in California, you can poke around and constitutionally, I think the court said, yes, you can do some poking around under some circumstance. All right, fine. I'm with you. What do we, but now we've got this additional defense going out. Obviously, it's in the same person's handwriting. So we have an interpretive, perhaps interpretive, unless the person's a mere amanuensis, writing down what the jurors supposedly said, each juror supposedly said. And that's given to the California courts. And it goes into a footnote, but they sort of say, well, anyway, if we look at this stuff, this is what happened. My question is, can we ignore it? And the answer is yes. Why? And the answer is no. What do we do with it? I think you can't ignore it because I think the quality of the evidence is very low. And I don't think it should have been considered by the California Supreme Court or the Court of Appeal in this case. And I don't think this court should consider it either. But I would like to say that Petitioner's main argument is this speculation argument. What would the judge have found out if he would have inquired further? He may have found something out that would have changed his mind. I think that's just rank speculation. That's not going to carry the day. But to the extent that there is some minimal evidence to show what they were thinking, it is in the record. And to the extent that it's considered at all, although I don't think it should be considered, I think it has such a minimal weight that it does not rebut anything. It does not show that if the judge had inquired further, he would have changed his mind. It doesn't show that the judge's decision was an unreasonable decision. Unless the court has any additional questions. There's an old common law rule of evidence that jurors are not allowed to impeach their own verdicts. It's codified in the federal rules of evidence. Most states follow what they do as a matter of common law or what I suppose some states have probably codified their rules. Pardon? Is that part of the evidence, the federal evidence code section? I believe I wrote a memo on that once and that's correct. Good chance you did. Jurors can't impeach their verdict. That's right. And the interpretation in many courts is that jurors are, their affidavits are stricken if a defense lawyer obtains an affidavit about what was said in the jury room in order to prove anything. That rule doesn't seem to have come up in this case, so I guess we don't decide anything about it. It's just not there for our purposes, right? It just hasn't been discussed. Your side didn't argue it. I mean, you could have used it, but you didn't. That's right. Well, when it wasn't cited to you by a petitioner, the respondent didn't feel that it was really, it didn't add anything to the discussion because it's such a large case. So we're not allowed to let you win on the basis of that rule because you didn't argue it. Well, I think the rules say that the Ninth Circuit can affirm on any argument, even those not proffered by the Attorney General or any other party. So I think you would still be free to deny the petition on that basis. Are there any additional questions from the court? Does California have that rule? I'm not aware of whether they do or not, Your Honor. Your California assistant AG? California Deputy Attorney General. Thank you, Counsel. I'll try to be brief. First, I think what's important to emphasize about Mr. LeBlanc, it occurred during the Court's colloquy with the jury, precisely when it became clear that a verdict of guilty on the robbery would inevitably lead to a verdict of guilty on the murder. And second, as to the jury questionnaires, I do believe, as I said earlier and as the State has now also conceded, that this court can ignore them. But I think what's important is that the appellate court didn't ignore them. It may not have relied exclusively on them, but it did rely on them for some footnoted, rather a long footnote, support, and that that was an improper basis and actually an unreasonable determination of the facts in light of the record, because those facts didn't exist in the record at the time the trial court made his decision. Assuming we agree with you on that point, however, if we find there was other evidence that was sufficient, wouldn't that be sufficient grounds for affirming? If that were the only thing, I agree, Your Honor, but that's not the only thing. The appellate court also relied on the trial court's inadequate investigation. It said that all four jurors corroborated each other, which certainly was not the case. It said that Juror Marshall and Juror – I'm sorry, Juror Morgan and Juror LeBlanc said exactly the same thing, which they didn't. And it said that the judge expressly stated, quote, unquote, that he, the judge, believed that both Mrs. Marshall and Mr. LeBlanc based upon their demeanor, and the judge never said anything of the kind. The only person's demeanor that was discussed was Mrs. Morgan and, to a lesser extent, Mrs. Crownover. The judge never said anything about Mr. LeBlanc's demeanor as supporting or rebutting the finding he was so determined to make. And finally, I would point to the colloquy about the aiding and abetting instruction and suggest that although the questions on how to interpret that instruction came from Mr. LeBlanc, Mr. LeBlanc was clearly having a big argument with Mr. Marshall in the jury room about how to reconcile the two prongs that say he's guilty and the two prongs that say he's not guilty. And that the judge, although he made very admirable efforts to clarify this for the jury, really wasn't very clear. If you look at the ---- Roberts, sounds like you'd be happiest if California videotaped jury deliberations so that we could then go over them and see if they properly considered the proper matters. Not at all, Your Honor. Under the Constitution, I think it would be very instructive as a private legal, you know, as a part of my own training, certainly, but otherwise, no. I mean, that would give us the most complete evidence on the proposition that you're putting at issue. Not at all, Your Honor, unless the Court also believes that Judge Strand in Symington did something absolutely improper in interviewing every single juror when he wanted to dismiss Juror Cote. Thank you, Your Honor. Thank you, counsel. Next, if you want to recess before I telephone? Not now, Your Honor. Do you want to recess? I'm done. Okay. Well, here I telephone. Thank you. Make sure you don't block the other side's view with any things you put up. Yes, sir. Counsel, do you have copies of that for us on the men? We have submitted, Your Honor, this morning. Mike got mixed up with the Roe v. Materials. Yours might be in the Roe v. Stack. Oh, hi. They're two different sizes of the same document like this.
judges: D.W. Nelson, Fernandez, Kleinfeld